**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NO. 5:17-CV-00007-GNS-LLK**

JOCLYN B. SUTTON                                                          **PLAINTIFF**

**v.**

NANCY A. BERRYHILL, Acting Commissioner of Social Security                **DEFENDANT**

<u>**FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION**</u>

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claims for Social Security disability benefits.  The Court referred the matter to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636.  The fact and law summaries of Plaintiff and Defendant are at Dockets 13 and 18, and the matter is ripe for determination.

Plaintiff argues that a judicial award of benefits is warranted because the evidence in the administrative record adequately shows that her low-back impairment (exacerbated by morbid obesity and diabetes) renders her incapable of even sedentary work on a full-time basis. Alternatively, she argues that a remand for a new decision is required because the administrative law judge's (ALJ's) finding that she can perform light work is unsupported by substantial evidence.

Because Plaintiff's second argument is persuasive, the RECOMMENDATION will be to REMAND this case to the Commissioner for a new decision and further administrative proceedings.

**Plaintiff's disability claim**

By July 2011, Plaintiff told orthopedic surgeon E. Quinn Regan that her low-back impairment with pain radiating into her lower extremities had reached the point that she "can no longer live with the pain." Administrative record (AR), p. 346.  In July 2011, Dr. Regan performed an L5/S1 micro-discectomy to address a large left-sided herniation.  *Id.*

1

Plaintiff noted improvement of symptoms for about two months after surgery but the pain returned and worsened. AR, p. 511.

The medical evidence pertaining to Plaintiff's low-back impairment is limited for the period after her surgery. She apparently sought treatment for ongoing pain radiating into her lower extremities, but the ALJ found that the treating records are mostly illegible. ALJ's decision, AR, p. 32.

In December 2013, Plaintiff was hospitalized for acute pyelonephritis (inflammation of the kidney). Doctors took a CT-scan of her abdomen (kidney), and the interpreter of the CT-scan observed additional information about Plaintiff's low-back spinal column: "Marked degenerative changes in the lower lumbar spine with osteophyte complexes at L4-L5 and L5-S1 that contribute to moderate to severe spinal canal stenosis (abnormal narrowing of a tubular structure). This may represent calcified disc herniations." AR, p. 472.

There is no evidence that any qualified medical source has evaluated Plaintiff's complaints and symptoms in light of the CT-scan results, which (at least from a lay, non-medical perspective) appear to be capable of explaining them.

**The ALJ's decision**

The administrative record contains three medical-source opinions regarding Plaintiff residual functional capacity (RFC). The ALJ weighed those opinions as described below, essentially rejected all three, and concluded that Plaintiff has an RFC for light work. Decision, p. 31.

In December 2011, Dr. Regan gave Plaintiff a work release to return to part-time work, with restrictions that limit her to 4-hour shifts that allow for alternate sitting/standing and total no more than 16 hours per week. AR, p. 333. In January 2012, after Plaintiff told Dr. Regan that she did not feel she could tolerate longer hours, Dr. Regan recommended that she "maintain function and keep as active as possible [and] if there are any problems in the future, she is instructed to give me a call." AR, p. 356. There is no evidence that Plaintiff contacted Dr. Regan. Plaintiff returned to work at

Home Depot until she was let go in November 2012, after which she filed applications of disability benefits.

In May 2014, Plaintiff was examined at the request of the state agency's one-time examining source, Michael Meade, M.D.  Dr. Meade's narrative report is at AR, pp. 511-516.  There is no evidence that Dr. Meade was aware of the CT-scan results or that the state agency or Plaintiff provided him with any other clinical test results.  His report findings appear to be based solely on Plaintiff's self-reported medical history, complaints, and symptoms, and his gross physical examination.  The ALJ interpreted Dr. Meade's findings as limited Plaintiff to sedentary work.

In September 2014, state-agency non-examining program physician Jack Reed completed the standard physical RFC assessment form.  AR, pp. 95-97.  Dr. Reed appears to have signed off on (or reaffirmed verbatim) the prior findings of the state-agency single decisionmaker (SDM) Donald Bragg.  *Compare* RFC forms at AR, pp. 82-84 and pp. 95-97, which are identical.  There is no indication that Mr. Bragg or Dr. Reed was aware of any clinical evidence except for the fact of Dr. Regan's July 2011 back surgery and Dr. Meade's prior physical-examination findings.  Dr. Reed explicitly limited Plaintiff to sedentary work.

The ALJ rejected Dr. Regan's December 2011 work release with restrictions to the extent it would permanently limit Plaintiff to part-time work.  Decision, AR, p. 37.  The ALJ rejected the opinions of Drs. Meade and Reed to the extent they would limit Plaintiff to sedentary work.  *See* decision at AR, pp. 35-37 (finding that, while Plaintiff may use a cane to walk, there is no evidence that she is medically required to do so and that, while Dr. Meade may have observed an abnormal gait on one occasion, there are no "recurring" [i.e., more than Dr. Meade's] observations of abnormal gait in the medical records).

The ALJ found Plaintiff's testimony and complaints to be incredible to the extent they would preclude all full-time work or limit her to sedentary work.

The ALJ found that Plaintiff is not disabled because she retains the ability to perform her past relevant work as a gas-station cashier (light work) and a drive-through worker (sedentary work) as well as a significant number of other sedentary jobs in the national economy.  AR, p. 38.

**The ALJ did not err in rejecting Dr. Regan's work release with restrictions to the extent it would limit Plaintiff to part-time work.**

Plaintiff argues that the ALJ erred in rejecting Dr. Regan's work release with restrictions, which she interprets as permanently limiting her to part-time work (i.e., she allegedly cannot sustain even sedentary work).  Docket 13, pp. 7-9.

The argument is unpersuasive because Dr. Regan's work release with restrictions did not rise to the level of a medical opinion (regarding Plaintiff's permanent limitations) satisfying the 12-month duration requirement.  *See* 42 U.S.C. § 423(d)(1)(A) (Disability means inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); *compare McKay v. Comm'r of Soc. Sec.*, No. C07-5334BHS-KLS, 2008 WL 2074053, at *7 (May 14, 2008 W.D. Wash.) ("These [work] releases were only for a total duration of several months; and therefore, fail to indicate a continuous period of disability for 12 months or more").

The ALJ identified substantial reasons for rejecting Dr. Regan's work release with restrictions to the extent it would limit Plaintiff to part-time work.  Decision, AR, p. 37.

**Substantial evidence does not support the ALJ's finding that Plaintiff has an RFC for light work.**

Residual functional capacity (RFC) is defined as "what an individual can still do despite his or her limitations."  Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *2.  RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and

continuing basis." *Id.* "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

The full range of sedentary work contemplates that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Soc. Sec. Rul. 83-10, 1983 WL 31251, at *5. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." *Id.* at *6.

The administrative record contains only one imagining study after Plaintiff's July 2011 low-back surgery. As noted above, a December 2013 CT-scan revealed:  "Marked degenerative changes in the lower lumbar spine with osteophyte complexes at L4-L5 and L5-S1 that contribute to moderate to severe spinal canal stenosis (abnormal narrowing of a tubular structure). This may represent calcified disc herniations." AR, p. 472.

No qualified medical source has evaluated Plaintiff's complaints of low-back pain radiating into her lower extremities in light of these objective medical findings. Nor has any medical source opined that these findings are compatible with an ability to sit or an ability to stand/walk for 6 hours (total) in an 8-hour workday as required to sustain sedentary or light work.

The ALJ referred to the CT-scan results twice in her written decision (AR, pp. 31 and 33), but an ALJ (like this Court) is "simply not qualified to interpret raw medical data in functional terms." *Fensterer v. Comm'r*, No. 12-13166, WL 4029049, at *10 (E.D. Mich. Aug. 7, 2013) (quoting *Nguyen v. Sec'y of Health & Human Servs.*, 172 F.3d 31, 35 (1st Cir. 1999)).

In rejecting the opinions of Drs. Meade and Reed that Plaintiff is limited to sedentary work, the ALJ effectively rejected every medical opinion regarding Plaintiff's RFC. Under these circumstances, Plaintiff's argument that the ALJ "played doctor" and "conjured up her own medical opinions that are refuted by the record" is persuasive. Docket 13, p. 7.

Judge Posner of the Seventh Circuit has warned that ALJs "must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).  Moreover, this and other courts have held that ALJs generally should not rely on their own interpretations of imaging studies when formulating a claimant's RFC.  *See e.g. Childress v. Comm'r*, No. 1:16-CV-00119-HBB, 2017 WL 758941, at *5 (Feb. 27, 2017 W.D. Ky.) (The ALJ impermissibly "made a residual functional capacity determination without any medical source statement in the record addressing the raw medical data from the MRIs"); *Deskin v. Comm'r*, 605 F.Supp.2d 908, 913 (N.D. Ohio 2008) ("The extensive MRI findings of diffuse and substantial degenerative disc disease throughout Deskin's spine provide objective medical evidence that compels the need for the opinion of a medical source to insist in the translation of the raw medical data here into functional limitations").

As indicated above, in rejecting all medical opinions and Plaintiff's credibility to the extent they would limit her to sedentary work, the ALJ emphasized the lack of evidence of medical need to use a cane and lack of "recurring" observations (documentation) of abnormal gait in the medical records.  Decision, AR, pp. 35-37.  Even if Plaintiff does not require a cane to walk, this does not prove that she can sit, stand, and walk on a continuing and regular basis sufficiently to sustain sedentary or light work.   Regarding the lack of documentation of abnormal gait, the ALJ acknowledged that some of the treatment records are illegible.  AR, p. 32.  This illegibility, which was not Plaintiff's fault, might explain the lack of documentation.  In any event, the ALJ's focus on documentation appears excessive in light of the CT-scan results, which (at least from a lay perspective) appear to be capable of explaining Plaintiff's complaints and symptoms.

Plaintiff's argument that the ALJ "considered the evidence the same as if Mrs. Stacks weighed only 100 pounds rather than almost 400" is also persuasive.  Docket 13, p. 12.  Even if the evidence as a whole (including the CT-scan results) do not establish an inability to sustain sedentary

or light work, they tend to bolster such a claim in the case of a morbidly-obese individual.  *See* Soc. Sec. Rul. 02-1p, 2002 WL 34686281 ("Obesity can cause limitation of function.  The functions likely to be limited depend on many factors, including where the excess weight is carried.  An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling").

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  In light of the ALJ's rejection of all the medical opinions and the failure of those opinions to take into account the CT-scan results, substantial evidence does not support the ALJ's finding that Plaintiff has an RFC for light work.

### RECOMMENDATION

The Magistrate Judge RECOMMENDS that the Court REMAND this matter to the Commissioner for a new decision and further administrative proceedings not inconsistent with this report.[1]

---

[1] While the Court will leave it to the Commissioner to determine how best to proceed upon remand, the Court notes that, according to *Deskin*, *supra*:

> As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations [based on that evidence], to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing.  This responsibility can be satisfied without such opinion only in a limited number of cases where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.  (internal quotation omitted).

The Court is not confronted with the question of whether substantial evidence would support a finding (with or without a supporting medical opinion) that Plaintiff is not disabled because she retains the ability to perform a significant number of <u>sedentary</u> jobs in the national economy.

**NOTICE**

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984).